IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PHILLIP SCOTT BAKER, )
)
Petitioner, )
)
v. ) 1:16CV628
)
DAVID MITCHELL, Superintendent )
Lanesboro Correctional, )
)
Respondent. )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has filed an Answer (Docket Entry 3), a Motion for Summary Judgment (Docket Entry 4), and a Brief in Support of the Motion for Summary Judgment (Docket Entry 5). Petitioner has filed a Response (Docket Entry 7) and a Supporting Brief to his Response (Docket Entry 8). This case is now prepared for a ruling.

## Background

On September 6, 2013, in Superior Court, Davidson County, Petitioner was convicted after a jury trial of first-degree felony murder and robbery with a dangerous weapon, in cases 10CRS4180 and 55741. (Docket Entry 1, §§ 1-6.) Petitioner was sentenced to life in prison. (*Id.*) On February 17, 2015, the North Carolina Court of Appeals found no error in Petitioner's conviction and on June 10, 2015 the North Carolina Supreme Court denied Petitioner's petition for discretionary review. *State v. Baker*, 770 S.E.2d 388 (N.C. Ct. App.

2015), *review denied*, 772 S.E.2d 725 (N.C. 2015). The instant Petition was filed on June 9, 2016. (Docket Entry 1.)

## Petitioner's Claim

Petitioner's sole ground for relief is that the "[e]vidence was insufficient to sustain the jury's verdict of guilty beyond a reasonable doubt in violation of the 5th and 14th Amendments of the U.S. Constitution." (*See id.* § 12, Ground One.)

## Factual Background

The North Carolina Court of Appeals summarized the facts from Petitioner's case as follows:

> On 31 July 2010, Chad Newsome ("Newsome") and Gary Wilson ("Wilson") travelled together to an abandoned home located at 117 Dacotah Street in Lexington, North Carolina, in order to purchase drugs from LeCourtney Murphy ("Murphy"). When they arrived at the house, they were met by defendant, who indicated that only Newsome was permitted to enter the house. Newsome agreed and went into the house with defendant to conduct the transaction while Wilson waited outside. A few minutes later, Wilson heard gunshots from inside the house. Wilson ran to obtain assistance from a nearby home. While Wilson was away, Newsome drove himself to a nearby hospital, where he died from complications resulting from two gunshot wounds to the chest.
>
> Officer Christopher Giordano ("Officer Giordano") of the Lexington Police Department ("LPD") arrived at the scene and determined from a witness that the shooting had occurred at the house at 117 Dacotah Street. Officer Giordano and two other LPD officers then entered that location and determined it was unoccupied. Officer Giordano began to search for any witnesses in the area. He quickly came into contact with Wilson, who told Giordano that he had come to 117 Dacotah Street with Newsome and then fled when he heard gunshots. Officer Giordano reentered the house and discovered, *inter alia*, scattered currency, an empty handgun magazine and shells, an empty black bag, and blood.

2

On 2 August 2010, Daquon Littles ("Littles"), who lived one block away from the abandoned home, provided a statement to law enforcement. According to the statement, on the day of the shooting, Littles saw defendant and Murphy arrive together in front of his apartment. Defendant walked off, carrying a black bag. Murphy spoke briefly with Littles and then left. Murphy was subsequently arrested and charged with robbery and first degree murder in connection with Newsome's death. He then provided law enforcement with a statement implicating defendant as the shooter. According to Murphy's statement, he had been contacted by Newsome on 31 July 2010, regarding the purchase of a pound of marijuana. However, he did not personally possess marijuana in that quantity, and as a result, he contacted defendant seeking to supplement his supply. When both Murphy and defendant pooled their marijuana supply together, the amount was still less than one pound. Defendant then suggested that they rob Newsome instead.

According to Murphy, defendant had placed a gun in Murphy's black bag, which he then took to meet with Newsome. Sometime later, defendant came running back to Murphy and told him to drive away. Defendant had blood on his clothing. During their escape, defendant confessed to Murphy that he had shot Newsome twice during a struggle in the abandoned home.

*Baker*, 770 S.E.2d 388.

## Standard of Review

Where, as here, a state trial court adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that

3

reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "Unreasonable" does not mean just "incorrect" or "erroneous" and the Court must judge the reasonableness from an objective standpoint. *Id.* at 409-11. State court factual findings are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This standard applies below.

## Discussion

As an initial matter, Respondent argues that the Petition is time-barred under 28 U.S.C. § 2244(d). (Docket Entry 5 at 9-18.) Although Respondent's arguments concerning the timeliness of the Petition may have merit, they involve somewhat complicated issues. The ground set out in Respondent's summary judgment brief presents no such difficulties. Moreover, the limitation period in § 2244(d) is not jurisdictional, so the Court need not consider it before proceeding to the merits. *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002).

Likewise, Respondent also contends that Petitioner's ground for relief has been procedurally defaulted. (Docket Entry 5 at 7-9.) Nevertheless, for similar reasons, the Court will proceed to the merits of Petitioner's ground for relief. *Yeatts v. Angelone*, 166 F.3d 255, 260–61 (4th Cir.1999) (noting that the rule of procedural default in habeas cases is grounded in concerns of comity and federalism and is not jurisdictional). Consequently, the Court will

4

not address either issue further, but instead will analyze the merits of Petitioner's ground for relief, which, as explained in greater detail below, is without merit.

A claim alleging insufficiency of the evidence cannot succeed in a habeas corpus action if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A court reviewing the sufficiency of the evidence "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). "[C]ircumstantial evidence may support a verdict of guilty, even though it does not exclude every reasonable hypothesis consistent with innocence." *United States v. George*, 568 F.2d 1064, 1069 (4th Cir. 1978). Taking the dictates of § 2254(d) into account, the key question becomes "whether a state court determination that the evidence was sufficient to support a conviction was an objectively unreasonable application of the standard enunciated in *Jackson*." *Williams v. Ozmint*, 494 F.3d 478, 489 (4th Cir. 2007) (internal brackets and quotation marks omitted).

Here, Petitioner raised the sufficiency of the evidence used to convict him with the North Carolina Court of Appeals. That Court rejected Petitioner's claim and in so doing reasoned as follows:

> "'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). "This Court reviews the trial court's denial of a motion to dismiss de

5

novo." *State v. Smith*, 186 N.C.App. 57, 62, 650 S.E.2d 29, 33 (2007).

In the instant case, defendant challenges whether the State presented sufficient evidence that he was the perpetrator of the robbery and murder. Defendant contends that the State's case against him relied primarily on defendant's extrajudicial confession to Murphy, and that this alleged confession was not supported by corroborating evidence. Defendant is mistaken.

It is well established that "a naked extrajudicial confession, uncorroborated by other evidence, is not sufficient to support a criminal conviction. The State must at least produce corroborative evidence, independent of defendant's confession, which tends to prove the commission of the charged crime." *State v. Ash*, 193 N.C.App. 569, 574, 668 S.E.2d 65, 69 (2008) (internal quotations and citations omitted). "Under the *corpus delicti* rule, the State may not rely solely on the extrajudicial confession of a defendant, but must produce substantial independent corroborative evidence that supports the facts underlying the confession." *State v. Smith*, 362 N.C. 583, 588, 669 S.E.2d 299, 303 (2008). The *corpus delicti* rule is satisfied "if the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime." *State v. Parker*, 315 N.C. 222, 236, 337 S.E.2d 487, 495 (1985).

In the instant case, the State presented substantial evidence, beyond defendant's confession to Murphy, that defendant was the individual who robbed and murdered Newsome. Murphy testified that he personally saw defendant place a handgun in a black bag similar to the one recovered at the scene of the murder. Littles testified that he saw defendant carry a black bag with him as he walked toward the abandoned home. Wilson testified that he and Newsome were met at the abandoned home by defendant, and that a few minutes after Newsome went inside with defendant, he heard gunshots. Furthermore, Newsome had been shot twice, consistent with defendant's confession. Finally, Murphy testified that he and defendant fled together after the murder. Taking this evidence in the light most favorable to the State, this is sufficient evidence to corroborate defendant's confession such that the case was properly submitted to the jury. *See Ash*, 193 N.C.App. at 575, 668 S.E.2d at 70

6

> (holding that the defendant's confession to murder and robbery was corroborated by ballistics evidence recovered from the scene of the murder, as well as by evidence that the defendant hid in hotel rooms, in an attempt to avoid detection). This argument is overruled.

*Baker*, 770 S.E.2d 388.

The Court agrees with the North Carolina Court of Appeals that there was sufficient evidence to sustain a verdict against Petitioner. Under North Carolina law,

> To convict a defendant of armed robbery, the State must prove three elements: " '(1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of "firearms or other dangerous weapon, implement or means"; and (3) danger or threat to the life of the victim.' " *Matter of Stowe*, 118 N.C.App. 662, 664, 456 S.E.2d 336, 338 (1995) (citations omitted). The elements necessary to establish first-degree murder under the felony murder rule are that the killing took place while the accused was perpetrating or attempting to perpetrate one of the enumerated felonies. *State v. Richardson*, 341 N.C. 658, 666, 462 S.E.2d 492, 498 (1995).

*State v. Ash*, 193 N.C. App. 569, 574 (2008).[1]

As noted above, in the instant case, the state presented substantial evidence, including but not limited to, Petitioner's confession to Murphy that Petitioner was the individual who robbed and shot Newsome. First, Murphy testified that he and Petitioner agreed to rob Newsome at the abandoned house on Dacotah Street. (Docket Entry 5, Ex. 7, Part 2, at 493-

---

[1] *See also State v. Hope*, 317 N.C. 302, 305 (1986) ("[U]nder N.C.G.S. § 14-87(a), armed robbery is: (1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened.) (citation, quotation omitted); *State v. Bunch*, 363 N.C. 841, 846 (2010) ("Felony murder is defined by statute in N.C.G.S. § 14-17, and this Court has confined the offense to only two elements: (1) the defendant knowingly committed or attempted to commit one of the felonies indicated in N.C.G.S. § 14-7, and (2) a related killing.") (citation, quotation omitted); N.C.G.S. § 14-17 (listing armed robbery as a predicate offense).

7

94.) Murphy also testified that he personally saw defendant place a handgun in a black bag similar to the one recovered at the scene of the murder. (*Id.* at 353, 498-99.)

Second, Littles testified that he saw Petitioner carry a black bag with him as he walked toward the abandoned home. (*Id.* at 422-24.) Third, Wilson testified that he and Newsome were met at the abandoned home by an individual matching Petitioner's description, and that soon after Newsome went inside with that individual, Wilson heard gunshots. (*Id.*, Part 1, at 278-79.)

Fourth, Newsome had been shot twice, consistent with Petitioner's confession. (*Id.*, Part 2, at 506; Part 3, at 663.) Scattered currency, blood, and spent shell casings were also found within the house on Dacotah Street, which tends to corroborate Petitioner's confession to robbing Newsome at gunpoint as well as his confession to their ensuing struggle. (*Id.*, Part 2 at 347-48, 353, 355, 506, 510-11.)

Fifth, Murphy testified that he and Petitioner fled together after the murder and that during that time Petitioner confessed to shooting Newsome. (*Id.*, Part 2, at 503-507.) Murphy explained that Petitioner confessed that once he "came in the house [Petitioner] said he pulled out the gun and made [Newsome] get on his knees and [Petitioner] demanded the money from him. And [Petitioner] said [Newsome] had reached the money out to him and told him it was right there. Once [Petitioner] tried to grab the money, [Newsome] jumped up and they started fighting." *Id.* at 506. According to Murphy, Petitioner confessed that during the course of this fight, Petitioner fired the weapon a number of times and though he did not hit Newsome the first time, he heard Newsome grunt at least twice. (*Id.*)

8

The Court agrees with the North Carolina Court of Appeals that taking this evidence in the light most favorable to the state, this is sufficient evidence to corroborate Petitioner's confession and to provide sufficient evidence as to Petitioner's convictions for both armed robbery and felony murder. Petitioner has failed to demonstrate that the state court decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or that the state court decision was based on an unreasonable determination of the facts. Petitioner's ground for relief lacks merit and should therefore be denied.

## CONCLUSION

For the reasons set forth above, Petitioner's ground for relief lacks merit and should therefore be denied. Neither a hearing nor the appointment of counsel is warranted.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be **GRANTED**, that the Petition (Docket Entry 1) be **DENIED**, and that Judgment be entered dismissing this action.

Joe L. Webster
United States Magistrate Judge

November 28, 2016